**Dismissed in Part, Reversed and Remanded in Part, and Opinion filed June 10, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00233-CV

---

**THE MONTROSE MANAGEMENT DISTRICT; THE PUBLIC OFFICIALS: CLAUDE WYNN, RANDY MICHMORE, CASSIE STINSON, KATHY HUBBARD, BRAD NAGAR, ROBERT JARA, BOBBY HUEGEL, DANA THORPE, LANE LLEWELLYN, TAMMY MANNING, DAVID ROBINSON, MICHAEL GROVER, AND RANDY ELLIS; AND BILL CALDERON, EXECUTIVE DIRECTOR Appellants**

**V.**

**1620 HAWTHORNE, LTD., Appellee**

---

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2012-20396**

---

# O P I N I O N

This is an appeal from the trial court's denial of a summary judgment motion based on governmental immunity.[1] The Montrose Management District (the District), the Public Officials,[2] and Executive Director Bill Calderon (collectively, the Appellants) assert that the trial court erred in denying their summary judgment motion on several grounds. In their first issue, which contains several sub-issues, the Appellants assert the trial court erred in denying summary judgment on jurisdictional grounds to the District. In its first sub-issue, the District contends that 1620 Hawthorne, Ltd. failed to establish that the District waived its immunity from suit because no waiver of immunity exists for complaints about the District's application of and actions under the Texas Local Government Code provision regarding dissolving the District or for any challenge to this provision's constitutionality. Second, the District asserts that Hawthorne did not prove that the District waived immunity from suit based on Hawthorne's complaint that the assessment order adopted by the West Montrose Management District (the West District) is void because it was not signed by the requisite number of petitioners. The District also argues that Hawthorne's contention that neither the West District nor the East Montrose Management District (the East District) complied with the provision of the Local Government Code establishing the areas eligible for the

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (permitting an interlocutory appeal of the denial of a jurisdictional plea based on an assertion of governmental immunity. When the record does not contain an order granting or denying a plea to the jurisdiction, but does include an order denying a motion for summary judgment in which the movant challenged the trial court's jurisdiction, an interlocutory appeal may be taken under subsection (a)(8) irrespective of the selected procedural vehicle. *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006).

[2] The District's board of directors consists of the following public officials sued in their official capacity only: Calude Wynn, Randy Mitchmore, Cassie Stinson, Kathy Hubbard, Brad Nagar, Robert Jara, Bobby Huegel, Dana Thorpe, Lane Llewellyn, Tammy Manny, David Robinson, Michael Grover, and Randy Ellis.

creation of municipal management districts provides no basis for a waiver of statutory immunity.

The Appellants assert in their second issue that the trial court erred in denying the Public Officials' summary judgment on jurisdictional grounds, again including sub-issues. The Public Officials assert two bases for reversing the trial court's summary judgment: (1) for the same reasons that the District is immune from suit, they are derivatively immune from suit, and (2) Hawthorne failed to establish the existence of a waiver of their immunity from suit based upon viable allegations of *ultra vires* conduct. Finally, in their third issue, the Appellants assert that District Executive Director Bill Calderon is immune from suit because he is not a member of the District's board with legal authority to vote on any of the actions about which Hawthorne complained.

After careful review of the summary judgment evidence, we determine that Hawthorne has failed to establish any waiver of governmental immunity for the District. Thus, the trial court lacked subject matter jurisdiction over the District. We likewise conclude that the trial court lacked subject matter jurisdiction over Calderon. We therefore order that all of Hawthorne's claims against the District and Calderon are dismissed for want of jurisdiction. However, we conclude that Hawthorne raised a fact issue regarding the *ultra vires* conduct of the Public Officials related to the assessment petition. Because we have concluded that this portion of Hawthorne's case should not be dismissed, we remand this cause for proceedings consistent with this opinion.

## I. BACKGROUND

The District is a municipal management district located in the Montrose area of Houston. It resulted from the 2011 consolidation of the East District, created in

3

2005,[3] and the West District, created in 2009.[4] The Texas Legislature created the East and West Districts through special legislation "to promote, develop, encourage, and maintain employment, commerce, transportation, housing, tourism, recreation, the arts, entertainment, economic development, safety, and the public welfare in the area of the district[s]."[5] The Public Officials are the volunteer members of the District's board of directors and Bill Calderon is its executive director.

Hawthorne owns commercial property in the portion of the District formerly known as the West District. In September 2011, Robert Rose, on behalf of Hawthorne, delivered 998 individually signed petitions for dissolution (collectively, the "Dissolution Petition") to the District. The Dissolution Petition from owners of property within the District subject to assessments by the District requested the District's board of directors—the Public Officials—to immediately dissolve. The Public Officials engaged in public and private meetings and ultimately determined that the Dissolution Petition did not represent the requisite 75% of District property owners for statutory dissolution of the District—in fact, they determined that the validated signers to the Dissolution Petition only represented owners of roughly 13% of the assessed value of property within the District.[6] Thus, the Public Officials refused to dissolve the District. By order dated November 14, 2011, following a public meeting, the District adopted an

---

[3] *See* Tex. Spec. Dist. Code Ann. §§ 3843.001–.005.

[4] *See id.* § 3878.001–.005.

[5] *See id.* §§ 3843.003(b), 3878.003(b).

[6] *See* Tex. Loc. Gov't Code Ann. § 375.262(1) (providing that, except for limitations not present here, a board of directors of a municipal management district "*shall* dissolve the district on written petition filed with the board by the owners of . . . 75 percent or more of the assessed value of the property in the district based on the most recent certified county property tax rolls" (emphasis added)).

order finding and concluding that the Dissolution Petition was insufficient to meet the statutory requirement for dissolution.[7]

Hawthorne filed suit against the District on April 5, 2012; it later amended its petition to add claims against the Public Officials and Calderon. In its petition, Hawthorne asserted that it had "been illegally assessed and/or taxed by the District." It alleged that the 998 signers of the Dissolution Petition, "when added together, constituted more than 75% of the owners within [the District] who were subject to the assessments of [the District and] more than 75% of the assessed value of the property in the District based upon the most recent certified county property tax rolls." Hawthorne contended that the Appellants refused to comply with "their mandatory and ministerial duty to dissolve" by "interpreting the 75 percent requirement to include the total value of all the properties of all owners of property, both residential and commercial, wherever located in the District." Hawthorne argued that the 75% requirement for dissolution must only apply "to those commercial landowners who are subject to the assessment and/or tax, such that 75 percent of that group may petition to obliterate the existence of the District if they so choose." According to Hawthorne, if this requirement were interpreted any other way, it was constitutionally infirm.

Hawthorne further asserted that the West District's assessment order was void and illegal *ab initio*. The West District's board was not permitted to impose an assessment or finance a service or improvement project unless a written petition requesting the improvement or service had been filed with it.[8] This petition must have been signed by "at least 25 owners of real property in the district that will be

---

[7] This order was amended and restated on February 13, 2012, after another public meeting.

[8] Tex. Spec. Dist. Code Ann. § 3878.204(a).

subject to the assessment, if more than 25 persons own real property subject to the assessment in the district according to the most recent certified tax appraisal roll for Harris County."[9]  Hawthorne identified three allegedly ineligible petition signers from the August 2009 petition that resulted in the assessment about which it complains.

Finally, Hawthorne contended that, before September 1, 2011, the only areas eligible to become an improvement district under statutory authority were those that existed in "an area devoted primarily to commercial development and business activity inside the boundaries of a municipality."[10]  Hawthorne alleged that neither the East nor the West District met these criteria because "the land within this area was not devoted primarily to commercial development and business activity."

Based on these allegations, Hawthorne asserted that it had standing as a "taxpayer" to bring claims for declaratory and injunctive relief against the Appellants that the District's unspent tax assessments are illegal or unconstitutional.  Hawthorne emphasized that it was only seeking prospective relief:  declaratory and injunctive relief that the District does not have the authority to spend previously assessed and collected but not yet spent taxes.  Hawthorne further claimed a waiver of governmental immunity under the *ultra vires* exception to governmental immunity for the acts of the Public Officials.  Finally, it asserted a waiver of governmental immunity under the Texas Uniform Declaratory Judgments Act (UDJA)[11] based on its constitutional claims for equal protection.

---

[9] *Id.* § 3878.204(b)(2).

[10]  This language is taken from section 375.021 of the Texas Local Government Code. This section has been repealed.  *See* Act of March 1, 1991, 72nd Leg., R.S., ch. 912, § 13.05, 1991 Tex. Gen. Laws 347, 349, *repealed by* Act of May 23, 2011, 82nd Leg., R.S., ch. 912, § 20, 2011 Tex. Sess. Law Serv. 2309, 2313.

[11] Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.011.

6

In its petition, Hawthorne sought the following declaratory relief: (1) the District's order refusing to dissolve is void on its face because the Public Officials wrongfully interpreted subsection 375.262(1) of the Texas Local Government Code; (2) the Dissolution Petition met the factual and legal requisites of this subsection of the Local Government Code because the signers constitute owners of "75 percent or more of the assessed value of property in the District based upon the most recent certified county property tax rolls" within the meaning of the statute; (3) the District has a "clear and unambiguous ministerial duty to dissolve and its failure to do so constitutes a clear abuse of discretion"; (4) to the extent that Chapter 375 of the Texas Local Government Code authorizes imposing a financial burden only on commercial properties to the benefit of all properties in the District, the law is unconstitutional in that it violates the equal protection provisions and the due process guarantees and due course of law provision of the federal and state constitutions; (5) all of the West District's "assessments and/or taxes" that have been instituted since August 2009 are void and to the extent not already spent should be reimbursed to those who were forced to pay the illegal assessments or taxes; and (6) neither the East nor the West District met the criteria established before September 1, 2011; specifically, neither was eligible to become an improvement district under the law in effect at the time it was formed because it was not "an area devoted primarily to commercial development and business activity inside the boundaries of a municipality."

The Appellants responded with pleas to the jurisdiction, which were consolidated into a summary judgment motion asserting both jurisdictional and merits-based grounds. In their motion, the Appellants asserted that the trial court lacked jurisdiction over Hawthorne's claims for the following reasons:

7

- The District's governmental immunity is not waived under the Declaratory Judgments Act for complaints about its actions under a statute. The Public Officials properly interpreted section 375.262(1) of the Texas Local Government Code to mean that before the board must dissolve the District, petitioners must submit a petition filed by 75 percent or more of the assessed value of *all of the property located within the District*. Because the Public Officials interpretation of this statute is "both rational and correct," they have likewise not waived their governmental immunity.

- Hawthorne failed to state a sufficiently viable constitutional challenge to section 375.262(1) or Chapter 375 of the Texas Local Government Code to waive governmental immunity. Hawthorne failed to allege and cannot prove that the Legislature could not have had any conceivably legitimate, debatable, or rational basis for section 375.261(1) and chapter 375 of the Local Government Code; thus its due process and equal protection claims fail as a matter of law.

- Hawthorne's failure to serve the Attorney General with a copy of its pleadings challenging the constitutionality of Chapter 35 of the Local Government Code requires dismissal of its constitutional claims.

- Two of the three signatories to the West District's assessment petition about which Hawthorne complains own property containing both commercial and residential uses. "By virtue of its commercial use," these properties are and were commercial property subject to assessment at the time the petition was submitted to the West District's board.

- Hawthorne did not exhaust its statutory and judicial remedies pursuant to Texas Local Government Code section 375.123 for contesting the assessments about which it complains, which deprives the trial court of subject matter jurisdiction over its request to reimburse property owners for assessments that have already been paid. Likewise, Hawthorne lacks standing to obtain relief for any other property owners because they failed to exhaust statutory remedies.

- Both the District and the Public Officials are immune from Hawthorne's complaints about the formation of the District

because Hawthorne failed to exhaust its statutory and judicial remedies and section 375.021 is inapplicable to the District because the District was created by special legislation, not pursuant to Chapter 375.

The Appellants also asserted in their summary judgment motion that the District's Executive Director, Bill Calderon, is not a proper defendant to a viable *ultra vires* claim because he is not a member of the District's board with legal authority to vote on any of the actions about which Hawthorne complains. The Appellants further challenged the merits of Hawthorne's suit in their motion. However, the trial court notified the parties that it would only consider the jurisdictional grounds raised in the summary judgment motion at submission.

In its response to the jurisdictional arguments raised in the Appellants' summary judgment motion, Hawthorne asserted that the Public Officials had refused to dissolve the District, despite the requisite number of signers to the Dissolution Petition.[12] It argued that "to interpret [subsection 375.261(1)] any other way[] would be to ensure that it is unconstitutional." Hawthorne further asserted that two of the three signers of the West District's assessment petition owned property for which they claimed residential homestead exemptions according to the certified tax appraisal rolls of the Harris County Assessment District (HCAD) at the time of their signing of the petition. A third signer's property was designated as residential property. Hawthorne provided some evidence in support of these allegations. Hawthorne reiterated its standing and waiver of governmental immunity assertions alleged in its pleadings, described

---

[12] Hawthorne earlier had filed with the trial court a compact disc containing a copy of the "very voluminous" Dissolution Petition. Because Hawthorne could not electronically file the compact disc, it informed the trial court and opposing counsel of its intent to rely upon this CD for purposes of its summary judgment response as if it were physically attached to the response as Exhibit A.

above, in its summary judgment response, providing legal authority in support of these arguments.

Hawthorne urged that the exhaustion of remedies doctrine does not apply under the facts of this case because it was not complaining about the amount of the tax assessment, but was instead claiming that the Appellants lacked authority to make the assessment. Finally, Hawthorne claimed, and provided some evidence, that it timely notified the Texas Attorney General of its constitutional challenge to Chapter 35.

The trial court heard the summary judgment motion on January 18, 2013. On February 25, it denied the motion "with respect to jurisdictional grounds only." It included the following clarifying language in its order denying the motion:

> Although Defendants' Motion for Summary Judgment includes evidence and issues beyond subject matter jurisdiction, the sole and exclusive issue that the Court is ruling on at this time is subject matter jurisdiction. Additionally, Defendants' Motion for Summary Judgment includes two affidavits signed by David Hawes (see Exhibit 2 and Exhibit 3 of Appendix in support of Defendants' Motion for Summary Judgment). By prior ruling of the Court on December 7, 2012, neither affidavit was considered by the Court in this ruling and should not be considered part of the Appendix.

From this interlocutory order, the Appellants appeal.[13]

## II. ANALYSIS

### A. Standard of Review and Applicable Law

A summary judgment motion challenging jurisdiction may challenge either the pleadings or the existence of jurisdictional facts. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). When such a motion

---

[13] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).

challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties to resolve the jurisdictional issues raised, as the trial court is required to do. *See id.* at 227. If a fact question is presented by the evidence regarding a jurisdictional issue, then the trial court is precluded from granting summary judgment on the jurisdictional challenge, and fact issues will be resolved by the fact-finder. *Id.* at 227–28. However, if the relevant evidence is undisputed or fails to raise a genuine fact issue regarding the jurisdictional challenge, the trial court grants summary judgment as a matter of law. *Id.* at 228. We review a trial court's ruling on a plea to the jurisdiction de novo. *Id.*

The District is a political subdivision of the State and retains immunity from suit, except where the Legislature has waived it. *See* Tex. Loc. Gov't Code Ann. § 375.004(a) (municipal management districts are political subdivisions of the State); *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) ("When performing governmental functions, political subdivisions derive governmental immunity from the state's sovereign immunity); *see also Tooke v. City of Mexia*, 197 S.W.3d 325, 331–32 (Tex. 2006) (explaining that states can only be sued when they consent). But a suit for declaratory or injunctive relief against a state official to compel compliance with statutory or constitutional provisions is not a suit against the State. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009). Such a suit is not barred by governmental immunity. *Id.* "To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* at 372.

The Texas Declaratory Judgments Act contains a waiver of immunity from suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b); *Heinrich*, 284 S.W.3d at 373 n.6. If a party joins a governmental entity and seeks a declaration that a statute

11

or ordinance is invalid based on either constitutional or non-constitutional grounds, immunity from suit is waived. *See City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391–92 (Tex. 2007); *Heinrich*, 284 S.W.3d at 373 n.6; *Gatesco Q.M., Ltd. v. City of Houston*, 333 S.W. 3d 338, 347–48 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Similarly, if a party joins such a governmental entity and seeks a declaration construing an ordinance or statute, immunity from suit is waived. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633–35 (Tex. 2010); *Heinrich*, 284 S.W.3d at 373 n.6; *Gatesco*, 333 S.W.3d at 348. However, governmental immunity will bar an otherwise proper UDJA claim that has the effect of establishing a right to relief against a governmental entity for which the Legislature has not waived immunity. *See Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011).

With these principles in mind, we turn to the issues raised in this appeal.

## B.  Issues Presented

The Appellants raise three main issues and numerous sub-issues on appeal. The District asserts that the trial court erred in denying it summary judgment on jurisdictional grounds because Hawthorne failed to affirmatively establish the existence of an express waiver of the District's immunity from suit for its requested declaratory relief that:  (1) the District dissolve under Texas Local Government Code subsection 375.262(1); (2) the assessment order adopted by the West District is void because the supporting petition was not signed by the requisite number of petitions; and (3) neither the East nor the West District complied with Texas Local Government Code section 375.021 when they formed.

The Public Officials contend that (a) the trial court erroneously denied them summary judgment on jurisdictional grounds for the same reasons as it erred in denying the District summary judgment on jurisdictional grounds and

12

(b) Hawthorne bore the burden of not "merely claiming" that they engaged in *ultra vires* conduct to waive their immunity from suit, but that Hawthorn had to assert a viable claim against them by alleging facts negating their immunity from suit. Finally, Executive Director Calderon argues that the trial court erred in denying his jurisdictional challenge because he is not a member of the District's board with legal authority to vote on any of the actions about which Hawthorne has complained.  For ease of review, we will first consider each of Hawthorne's requests for declaratory relief and the relevant arguments presented by the Appellants.

## C.    Interpretation of Subsection 375.262(1)

Hawthorne's first two requested declarations, as well as the first portion of its third, concern the interpretation of subsection 375.262(1) of the Texas Local Government Code:

a) the November 14, 2011 Order of the District is void on its face due to the fact that the District wrongfully misinterpreted the 75 percent requirement contained in Section 375.262(1) of the Texas Local Government Code to include properties assessed by other entities rather than just by the District itself;

b) the Dissolution Petition met the factual and legal requisites of Section 375.262(1) because it constituted "75 percent or more of the assessed value of the property in the District based upon the most recent certified county property tax rolls," within the meaning of that statute; [and]

c) the District had and has a clear and unambiguous ministerial duty to dissolve and its failure to do so constitutes a clear abuse of discretion.

We begin our analysis by noting that Hawthorne asserts that the UDJA waives the District's immunity from suit.  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.004(a), 37.006(b); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74

S.W.3d 849, 859–60 (Tex. 2002). As noted above, the UDJA waives a governmental entity's immunity for a declaration construing an ordinance or statute. *See Tex. Lottery Comm'n*, 325 S.W.3d at 633–35. Thus, had Hawthorne simply sought construction of this statute, the District's immunity from suit likely would have been waived. However, governmental immunity is not waived under the UDJA for complaints about a government entity's *actions* under a statute. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011) ("Sefzik is not challenging the validity of a statute; instead, he is challenging TxDOT's actions under it, and he does not direct us to any provision under the UDJA that expressly waives immunity for his claim."); *Tex. Dep't of Ins. v. Reconveyance Servs., Inc.*, 306 S.W.3d 256, 258–59 (Tex. 2010) (per curiam) (explaining that when allegations and requested declarations are, substantively, *ultra vires* claims, the governmental entity retains immunity from suit, and immunity is waived only for the government officers in their official capacity); *cf. Sawyer Trust*, 354 S.W.3d at 388 ("[S]overeign immunity will bar an otherwise proper DJA claim that has the effect of establishing a right to relief against the State for which the Legislature has not waived immunity.").

As to these three requested declarations, Hawthorne seeks far more than construction of section 375.262; he seeks relief for the District's *actions* under this section. Accordingly, Hawthorne has failed to establish a waiver of immunity for the District as to this requested relief. *See Sefzik*, 355 S.W.3d at 622; *Sawyer Trust*, 354 S.W.3d at 388. We thus sustain the District's first issue to the extent it relates to these requests for declaratory relief.

These requested declarations, however, also implicate the *ultra vires* exception to governmental immunity for the Public Officials. As noted above, Hawthorne asserts that the Dissolution Petition triggers the mandatory dissolution

14

requirement of subsection 375.262(1) because it contains signatures from owners of 75% or more of the assessed value of property subject to assessment by the District. According to Hawthorne, the Public Officials failed in their ministerial duty to dissolve the District when faced with the Dissolution Petition. *See Heinrich*, 284 S.W.3d at 372 (explaining that to fall within the *ultra vires* exception, a party must allege that the public officer failed to perform a purely ministerial act or acted without legal authority). There is no dispute that the Dissolution Petition does not contain signatures from owners of 75% or more of the assessed value of all property in the District.

To determine whether the facts pleaded by Hawthorne demonstrate the *ultra vires* nature of the Public Officials' actions in denying the Dissolution Petition, we necessarily must construe section 375.262 of the Texas Local Government Code.[14] *Cf. City of Houston v. Little Nell Apartments, L.P.*, —S.W.3d—, 2014 WL 257977, at *5–6 (Tex. App.—Houston [14th Dist.] Jan. 23, 2014) (construing city ordinance to determine whether facts pleaded demonstrated public official acted in *ultra vires* manner); *McLane Co. v. Strayhorn*, 148 S.W.3d 644, 650 (Tex. App.—Austin 2004, pet. denied) ("Therefore, to determine whether McLane may maintain its declaratory judgment suit against the Comptroller, we must decide whether the Comptroller validly exercised her discretion or acted outside her legal authority in in refusing to accept the letter of credit, which in turn requires us to construe [Tex. Tax Code Ann.] section 154.051.").

---

[14] Although we must construe this statute to determine whether the Public Officials' action in denying the Dissolution Petition constitutes an *ultra vires* claim, in these particular requested declarations Hawthorne is not challenging the validity of the statute. *Cf. Tex. Lottery Comm'n*, 325 S.W.3d at 633–34 ("In *Heinrich* we distinguished between claims seeking declaratory relief in an *ultra vires* suit, which must be brought against governmental officials, and suits challenging the validity of an ordinance or statute[, which require the relevant governmental entities be made parties].").

When interpreting a statute, our primary objective is to give effect to the Legislature's intent. *Epco Holdings, Inc. v. Chicago Bridge & Iron Co.*, 352 S.W.3d 265, 269–70 (Tex. App.—Houston [14th Dist.] 2011, pet. dism'd); *see* Tex. Gov't Code Ann. § 312.005. We look to the statute's plain meaning because we presume the Legislature intends the plain meaning of its words. *Epco Holdings, Inc.*, 352 S.W.3d at 270. '"We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."' *Id.* (quoting *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)). Every word in a statute is presumed to have been used for a purpose; each sentence, clause and word is to be given effect if reasonable and possible. *Id.* (quoting *Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 593 (Tex. 2000)). Thus, we should not adopt a construction that renders a statutory provision meaningless. *Id.*

Section 375.262, entitled "Dissolution by Petition by Owners," provides as follows:

> Except as limited by [a section inapplicable here], the board shall dissolve the district on written petition filed with the board by the owners of:
>
> > (1) 75 percent or more of the assessed value of the property in the district based on the most recent certified county property tax rolls; or
> >
> > (2) 75 percent or more of the surface area of the district, excluding roads, streets, highways, utility rights-of-way, other public areas, and other property exempt from assessment under Sections 375.161 [certain residential property], 375.163 [recreational, park, or scenic use property], and 375.164 [residential property exempted from the board], according to the most recent certified county property tax rolls.

Tex. Loc. Gov't Code Ann. § 375.262.

The Public Officials assert that their decision to deny the Dissolution Petition was correct because it was based on the plain language of subsection 375.262(1). According to the Public Officials, this subsection mandates that, before a board must dissolve a district, petitioners must submit a petition filed by the owners of 75% or more of the assessed value of *all* property located within the district according to the most recent certified county property tax roll. Hawthorne, on the other hand, asserts that the 75% requirement referred to in subsection 375.262(1) must refer only to the value of property *subject to assessment* by the District. Otherwise, according to Hawthorne, the commercial property owners in the District alone would never be able to dissolve it because the total value of their property within the District is well below the 75% threshold.

We agree with the Public Officials' interpretation of subsection 375.262(1). The Legislature's decision to exclude any language in subsection 375.262(1) stating that only "property subject to assessment" should be included in the calculation of the required percentage of "the assessed value of the property in the district" demonstrates that language and concept was omitted for a reason. *See Combs*, 340 S.W.3d at 439 (stating that Legislature purposefully omits words in a statute not chosen); *Epco Holdings, Inc.*, 352 S.W.3d at 270. As excerpted above, subsection 375.262(2), which authorizes dissolution based upon a petition signed by owners of 75% of "the surface area of the district" expressly excludes from the calculation property "exempt from assessment." If the Legislature had intended for the formula in subsection 375.262(1) to refer only to property subject to assessment in the District, it knew how to say so, as subsection 375.262(2) aptly demonstrates. *See Combs*, 340 S.W.3d at 439; *In re Smith*, 333 S.W.3d 582, 586 (Tex. 2011) (explaining that courts should consider it a "fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be

17

the surest guide to legislative intent") (internal quotations omitted); *see also Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985) ("Every word excluded from a statute must be presumed to have been excluded for a reason.").

This interpretation is bolstered by the language used in Texas Local Government Code section 375.022, which provides for the creation of a municipal management district (MMD) by petition. This section provides that, to create an MMD, the Texas Commission on Environmental Quality must receive a petition signed by "the owners of a majority of the assessed value of the real property in the proposed district, according to the most recent certified county property tax rolls." Tex. Loc. Gov't Code Ann. § 375.022(a), (b)(1). Before an MMD is created, there is no property "subject to assessment." Thus, in this section, "assessed value" must refer to the value of *all* property in the proposed MMD. The use of this identical phrase later in the statutory scheme when describing how an MMD may be dissolved by petition supports the Public Officials' interpretation of subsection 375.262(1).[15]

Because there is no dispute that the Dissolution Petition was not supported by signatures from owners of 75% of the assessed value of the property in the District, the Public Officials did not have a ministerial duty to dissolve the District. *Id.* § 375.262(1). Thus, Hawthorne's asserted facts do not support a claim of *ultra vires* action by the Public Officials. As to the declarations excerpted above,

---

[15] *Accord* Tex. Spec. Distr. Code Ann. § 3843.204 (providing that the East District's board may not impose an assessment or finance a service or improvement project unless a petition signed by "the owners of a majority of the assessed value of the real property in the district or in the area of the district that *will be subject to the assessment*" or "at least 25 persons who own real property in the district or the area of the district *that will be subject to the assessment*" (emphasis added)); *id.* § 3878.204 (similarly stating that, before the West District's board of directors may impose an assessment or finance a service project, they must receive a petition signed by "the owners of a majority of the assessed value of real property in the district *subject to assessment*" or "at least 25 owners of real property in the district that *will be subject to the assessment*" (emphasis added)).

Hawthorne is not seeking declaratory relief against state officials failing to perform a ministerial act. *See Heinrich*, 284 S.W.3d at 372 (providing that if a plaintiff alleges only facts demonstrating acts within a public official's legal authority or discretion, the claim seeks to control state action and is barred by sovereign immunity). Hawthorne may not maintain these claims for declaratory relief against them.

For the foregoing reasons, Hawthorne has failed to establish either a waiver of governmental immunity or alleged an *ultra vires* act regarding the following declaratory relief:

a) the November 14, 2011 Order of the District is void on its face due to the fact that the District wrongfully misinterpreted the 75 percent requirement contained in Section 375.262(1) of the Texas Local Government Code to include properties assessed by other entities rather than just by the District itself;

b) the Dissolution Petition met the factual and legal requisites of Section 375.262(1) because it constituted "75 percent or more of the assessed property in the District based upon the most recent certified county property tax rolls," within the meaning of that statute; [and]

c) the District had and has a clear and unambiguous ministerial duty to dissolve and its failure to do so constitutes a clear abuse of discretion.

To the extent the trial court determined otherwise in its summary judgment order, it erred. We thus sustain in part the Appellants' first and second issues.

## D.    Constitutional Claims for Relief

In two of its requests for declaratory relief, Hawthorne asks that the court declare that section 375.262(1) and Chapter 375 of the Local Government Code are unconstitutional, both facially and as applied to it. Specifically, Hawthorne seeks declarations that

19

the taxation of only commercial property owners, whether referred to as a tax or as an assessment, coupled with the fact that those burdened by the tax cannot dissolve the taxing authority because of the 75 percent rule, is in violation of the equal protection provisions of both the Texas and United States Constitutions, e.g., Article III, Section 1 of the Texas Constitution and Amendment XIV of the United States Constitution, and also is a violation of the substantive due process guarantees found in the 5th and 14th Amendments to the United States Constitution and the due course of law provision of Article 1, Section 19 of the Texas Constitution[.]

The facts Hawthorne alleges in support of its constitutional claims are the following:

It is not reasonable to assume that non-commercial owners of real property and improvements within the District, who reap the benefits of the assessment and/or tax expenditures but do not have to pay for any services or improvements, will be inclined to dissolve the District. Their motivation is exactly the opposite—they will want to keep the District alive and continue to enjoy the free services and improvements windfall created by the Texas Legislature.

[W]hen understood in this context, it is obvious that dissolution must be an option to those commercial landowners who are subject to the assessment and/or tax, such that 75 percent of that group may petition to obliterate the existence of the District if they so choose. Indeed, [the District]'s own website and official records admit that it has no legal authority whatsoever to assess any property owners other than commercial property owners. For example, the District has admitted that the property subject to assessment will solely be the land and improvements of the commercial property owners within the boundaries of the District. The District has further admitted that the following property will be exempt from assessment: single-family detached residential, duplexes, triplexes, quadraplexes, condominiums, municipalities, counties, other political subdivisions, etc.

Thus, the fact that the District may not assess and/or tax non-commercial property owners is not even subject to legitimate debate, as the Texas Legislature has clearly specified that the [District] may not assess any land or improvements unless owned by commercial

20

property owners. [I]t is obvious that the 75 percent threshold clearly and unambiguously relates to 75 percent of the assessed value of the commercial properties within the District who have been assessed by the District, not by 75 percent of the owners within the geographical boundaries of the District who are not (and cannot ever legally be) assessed by the District but have been assessed by other instrumentalities of government, such as an ad valorem tax by Harris County. [Hawthorne] alleges that, to interpret this law any other way, would be to ensure that it is unconstitutional.

As noted above, when a party joins a governmental entity and seeks a declaration than a statute is invalid based on constitutional grounds, immunity from suit is waived. *Gatesco*, 333 S.W.3d at 347–48. But we must presume the constitutionality of the statute challenged here, and Hawthorne bears the burden of proving it unconstitutional. *See Alobaidi v. Univ. of Tex. Health Sci. Ctr. at Houston*, 243 S.W.3d 741, 756–47 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (determining, in a plea to the jurisdiction, whether certain section of the Texas Labor Code violate the equal protection clauses of the state and federal constitutions). If the plaintiff fails to plead a viable claim, a governmental defendant remains immune from suit for an alleged constitutional violation. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 10–12 (Tex. 2011).

We analyze equal protection challenges under the state constitution in the same way as those under the federal constitution. *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 266 (Tex. 2002). Like the United States constitution, the equal protection clause of the Texas constitution directs governmental actors to treat all similarly situated persons alike. *Sanders v. Palunsky*, 36 S.W.3d 222, 224–25 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, (1985)). Where, as here, neither a suspect classification nor a fundamental right is involved, the challenged law survives constitutional scrutiny if it is rationally related to a legitimate government

21

purpose. *See Romer v. Evans*, 517 U.S. 620, 634–35 (1996). Courts applying this standard must determine (1) whether the challenged legislation has a legitimate purpose, and (2) whether it was reasonable for lawmakers to believe that the use of the challenged classification would promote that purpose. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 639 (Tex. 2008).

A violation of substantive due process occurs when the government deprives individuals of constitutionally protected rights by an arbitrary use of its power. *Byers v. Patterson*, 219 S.W.3d 514, 525 (Tex. App.—Tyler 2007, no pet.) (citing *Simi Inv. Co. v. Harris Cnty., Tex.*, 236 F.3d 240, 249 (5th Cir. 2000)). Under the federal constitution, we review the government's action against the deferential "rational basis" test that governs substantive due process claims. *Id.* A government action satisfies this test if evidence in the record shows it to be at least fairly debatable that the action was rationally related to a legitimate government interest. *City of San Antonio v. TPLP Office Park Props.*, 218 S.W.3d 60, 65 (Tex. 2007). Some decisions indicate that a more rigorous standard applies to challenges brought under the due course of law clause of the state constitution. *See Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 525 (Tex. 1995); *Patel v. Tex. Dep't of Lic. & Reg.*, No. 03-11-00057-CV, 2012 WL 3055479, at *9 (Tex. App.—Austin July 25, 2012, pet. granted) (asking whether statute is reasonably necessary to accomplish purpose within scope of police power and uses reasonable manner of accomplishing goal). Under either standard, we conclude that the challenged statutes are sufficiently rational and reasonable to satisfy constitutional requirements.

One of the declarations Hawthorne seeks is that taxing commercial property owners in the district to benefit all property in the district is unconstitutional. We disagree. As the Supreme Court of the United States explained in rejecting an

22

equal protection challenge to the differential tax treatment of corporate and individual property, "the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359 (1973).

Hawthorne's principal constitutional claim is, at its core, that the commercial property owners in the District are the only property owners burdened by assessments that benefit all property owners, including those exempt from assessment, yet these commercial property owners may not dissolve the District because of the "75 percent rule" imposed by section 375.262(1). Hawthorne's complaint is based on the presumption that the commercial property owners subject to assessment have no opportunity to dissolve the District because of this "rule." Hawthorne's contention is simply wrong. As noted above, not only may commercial property owners dissolve a district under subsection (1) by garnering petitions from the owners of 75% of the assessed value of property within the district, but subsection (2) provides for dissolution of a district when the owners of 75% of the surface area of property subject to assessment within the district file a written petition with the board. *See* Tex. Loc. Gov't Code Ann. § 375.262. Other means of dissolution of a district are also provided for in Chapter 375. The board of directors may, with certain limitations depending on bond indebtedness, dissolve the district by a majority vote. Tex. Local Gov't Code Ann. § 375.261. Additionally, the governing body of a municipality in which a district is wholly located may dissolve a district by adopting an ordinance doing so by a vote of not less than two-thirds of its membership. *Id.* § 375.263(a).

There is nothing irrational or unreasonable in the Legislature's determination that dissolution of a district can occur based upon varying degrees of support from a district's board of directors, the governing body of the municipality, the owners

of substantial majority of the area in a district subject to assessment, or the owners of a substantial portion of the total assessed value of the property in a district. In fact, a petition to create a district must be signed by "the owners of a majority of the assessed value of the real property in the proposed district, according to the most recent certified county property tax rolls." Tex. Loc. Gov't Code Ann. § 375.022. As the District explained in its summary judgment motion,

> given the practical problems that likely would result if a district were dissolved by a property owner petition, it makes sense that the Legislature imposed a higher percentage requirement of the total assessed property value to dissolve a district (75% or more of the assessed value) than the Legislature required to create a district by petition under Chapter 375 (50% of the assessed value of the real property in such a district).

In short, Hawthorne cannot negate any rational or reasonable basis for subsection 375.262(1) and Chapter 375, which vitiates both its due process and equal protection claims for declaratory relief. Thus, the District has not waived its immunity from suit regarding Hawthorne's requests for declaratory relief based on the alleged constitutional infirmity of these statutes. We sustain in part the District's first issue regarding Hawthorne's request for declaratory relief that subsection 375.262(1) or Chapter 375 of the Local Government Code are unconstitutional facially or as applied.

## E.    Validity of Original Assessment Petition

Regarding the validity of the original assessment petition, Hawthorne sought a declaration from the trial court that "all of the West Montrose Management District's assessments and/or taxes which have been instituted since August of 2009 are void and, to the extent not already spent, must be reimbursed to those who were forced to pay those illegal assessments and/or taxes." First, this requested declaration is directed to the conduct of the Public Officials because it is

24

an allegation that they failed to act in conformity with the requirements of section 3878.204 of the Special District Local Laws Code. *See Heinrich*, 284 S.W.3d at 372 (to fall within the *ultra vires* exception, public official must be alleged to be acting without legal authority or failing to perform purely ministerial act). This section provides that the West District board of directors, *i.e.*, the Public Officials, may not impose an assessment or finance a service or improvement project unless a written petition signed by at least 25 owners of real property in the district that will be subject to the assessment requesting the improvement or service has been filed with the board. *See* Tex. Spec. Dist. Code Ann. § 3878.204.

In response to this requested declaratory relief, the Public Officials first assert that the trial court lacked subject matter jurisdiction because Hawthorne failed to exhaust its statutory remedies prior to filing suit. Specifically, they assert that Hawthorne failed to comply with section 375.123 of the Local Government Code, which provides for an appeal of the determination of an assessment to a district's board by filing a notice of appeal within 30 days after the district adopts an assessment. Tex. Loc. Gov't Code Ann. § 375.123(a). Failure to timely file a notice of appeal results in the loss of the right to appeal the assessment. *Id.* § 375.123(c).

Generally, courts do not interfere with the statutorily conferred duties and functions of an administrative agency. *Appraisal Review Bd. of Harris Cnty. Appraisal Dist. v. O'Connor & Assocs.*, 267 S.W.3d 413, 418–19 (Tex. App.— Houston [14th Dist.] 2008, no pet.). Courts may intervene in administrative proceedings, however, when an agency exercises authority beyond its statutorily conferred powers. *Id.* at 419; *see also Lazarides v. Farris*, 367 S.W.3d 788, 798 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Because Hawthorne's complaint is that the West District's board of directors acted entirely without statutory

authority in imposing the assessment, we conclude that Hawthorne was not required to exhaust administrative remedies in this case prior to filing suit.[16] *Cf. Appraisal Review Bd. of Harris Cnty. Appraisal Dist.*, 267 S.W.3d at 419 (distinguishing between complaints that a taxing authority did not fully comply with procedural requirements, which requires exhaustion of administrative remedies, and allegations that these authorities are acting "wholly outside the Tax Code provisions," which does not require exhaustion of administrative remedies).

Next, the Public Officials assert that the summary judgment record conclusively establishes that the petition submitted in support of the West District's assessment order contained the requisite number of signatures of eligible property owners. As noted above, Hawthorne asserted that three of the signers of the assessment petition were not eligible to sign it. *See* Tex. Spec. Dist. Code Ann. § 3878.204. The Public Officials provided uncontroverted evidence that 26 property owners signed the assessment petition. Thus, in support of their claim that the requisite number of property owners signed the assessment petition, the Public Officials provided certified copies of the official public records of the HCAD for two of the three challenged signers. Although the copies contained in our record are not entirely legible, these records both indicate that the property is classified as "F1: Real, Commercial."

In response, Hawthorne provided copies of the HCAD's "Real Property Account Information" statements for these owners, which Rose, on behalf of

---

[16] The Appellants rely on *In re Nestle, USA, Inc.* and *Caspary v. Corpus Christi Downtown Management District* to support their contention that Hawthorne was required to exhaust its administrative remedies before it could appeal from the West District's assessment scheme. *See In re Nestle, USA, Inc.*, 359 S.W.3d 207, 208 (Tex. 2012); *Caspary v. Corpus Christi Downtown Mgmt. Dist.*, 942 S.W.2d 223 (Tex. App.—Corpus Christi 1997, writ denied). But neither of these cases involved a claim, as we have here, that the government official was entirely without authority to act in the manner in which she did—i.e., that the act complained-of is void.

26

Hawthorne, verified in his affidavit were "true and correct copies" of the HCAD data sheets. These copies indicated that the properties owned by these signatories are classified as "F1 – Real, Commercial." However, these statements also reflected that the property owners were subject to a residential homestead exemption for these properties. Rose also testified in his affidavit that, because these property owners claimed residential homestead exemptions, their property "has not been subject to the assessment."

After a political subdivision of the State, like the District, "asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *See Miranda*, 133 S.W.3d at 227–28. We believe that Hawthorne has sufficiently established that there is a disputed fact question regarding the evidence underlying this jurisdictional issue, which impacts the merits of Hawthorne's claim for declaratory relief.

We thus conclude that, as to Hawthorne's requested declaration that the West District's assessment order is void, it has created a fact issue on jurisdiction. Because there is a fact issue on jurisdiction, the trial court properly denied the Public Officials' summary judgment as to this particular claim. Accordingly, we overrule in part the Appellants' second issue.

**F.      Eligibility of District to Become an Improvement District**

In Hawthorne's final request for declaratory relief, it sought a declaration that

> neither the East Montrose Management District nor the West Montrose Management District met the criteria established prior to September 1, 2011; namely, that the only areas eligible to become an

27

improvement district under [Texas Local Government Code] section 375.021 were those which existed in "an area devoted primarily to commercial development and business activity inside the boundaries of a municipality."

In their motion for summary judgment, the Appellants urged that they remain immune from this complaint because section 375.021 was inapplicable to the East and West Districts because they were created by special legislation, not pursuant to a Chapter 375 petition under the Local Government Code. Appellants asserted that this provision, since repealed, is inapplicable to the legislatively created Districts. We agree.

Subchapter B of Chapter 375 of the Local Government Code is entitled "Creation of District." It contains statutes detailing how an MMD may be created, including the requisites for a petition to create an MMD, a hearing before the Texas Commission on Environmental Quality regarding the creation of an MMD, public notice for the hearing, the procedures for the hearing, and the requirements for an order creating the district, including stating the specific purposes for which the district is created and appointing the initial directors. *See* Tex. Loc. Gov't Code Ann. §§ 375.022–.026. Section 375.021, now repealed, was formerly a part of this subchapter. *See* Act of March 1, 1991, 72nd Leg., R.S., ch. 912, § 13.05, 1991 Tex. Gen. Laws 347, 349, *repealed by* Act of May 23, 2011, 82nd Leg., R.S., ch. 912, § 20, 2011 Tex. Sess. Law Serv. 2309, 2313.

Both the East and West Districts, however, were not created by the procedures set forth in subchapter B of Chapter 375. Rather, they were created by special legislation. *See* Tex. Spec. Dist. Code Ann. §§ 3843.002–.005 (creating East District, defining the East District's territory, declaring the East District's purpose, and making findings of benefit and public purpose of the East District); *id.* §§ 3878.002–.005 (same for West District); *see also id.* §§ 3878.251–.257

28

(providing authority for the consolidation of the West District with "one other municipal management district that adjoins or has a boundary that is within a two-mile radius of any boundary of the district"). Therefore, former section 375.021 did not apply to their formation. Because Hawthorne asserts that there is an irreconcilable conflict between former section 375.021 and the creation of the East and West Districts, the special legislation creating these districts would govern their creation. *See* Tex. Gov't Code Ann. § 311.026 (providing that special or local provisions prevail over general provision in the event of an irreconcilable conflict).

Accordingly, Hawthorne has not established any waiver of the Appellants' immunity for this requested declaration. We therefore sustain the Appellants' first and second issues to the extent they relate to this requested declaration.

## G. Executive Director Calderon's Immunity from Suit

In the Appellants' third issue, they assert that Calderon is immune from suit because he lacked authority to vote on any of the issues raised by Hawthorne. In their summary judgment motion, the Appellants provided a footnote stating "Bill Calderon, the District's Executive Director, is not a proper defendant to even a viable *ultra vires* claim because he is not a member of the District Board with legal authority to vote on any of the actions about which [Hawthorne] complains."

Hawthorne states in its pleadings that Calderon is "the Executive Director for the Montrose Management District" and lists him separately from the other "Board Defendants." Accordingly, based on Hawthorne's own pleadings, Calderon is not listed as a member of the board of directors of the District. The proper defendants in an *ultra vires* action are those officials whose acts or omissions allegedly violated the plaintiff's rights. *Sefzik*, 355 S.W.3d at 621.

29

Here, the relevant jurisdictional evidence regarding Calderon is undisputed or fails to raise a genuine fact issue regarding the Appellants' jurisdictional challenge. Thus, the trial court should have granted summary judgment to him as a matter of law. *Miranda*, 133 S.W.3d at 228. Accordingly, we sustain the Appellants' third issue.

### III. CONCLUSION

We have sustained in full the Appellants' first issue, determining that the District is immune from suit as to all of Hawthorne's claims. We have also sustained the Appellants' third issue and conclude that Bill Calderon is likewise immune from suit as to all of Hawthorne's claims. We therefore order all of Hawthorne's claims against the District and Calderon dismissed.

However, we have determined that Hawthorne has raised a fact issue concerning its requested declaration that the assessment order is void, which is an allegation that the Public Officials acted in an *ultra vires* manner in adopting it. We therefore have overruled this issue in part as it relates to this particular requested declaratory relief. The remainder of Hawthorne's claims against the Public Officials are dismissed.

We remand this cause to the trial court for proceedings consistent with this opinion.


/s/    Sharon McCally
       Justice


Panel consists of Justices McCally, Busby, and Donovan.

30