ACCEPTED
03-13-00526-CV
5276282
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/13/2015 6:15:17 PM
JEFFREY D. KYLE
CLERK

# NO.  03-13-00526-CV

## IN THE COURT OF APPEALS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/13/2015 6:15:17 PM
JEFFREY D. KYLE
Clerk

## THIRD COURT OF APPEALS DISTRICT

**PHARMSERV, INC.,** *Appellant*

**V.**

**THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION and OFFICE OF INSPECTOR GENERAL OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION,** *ET AL*
*Appellees*

**On Appeal from the 261st Judicial District Court of Travis County, Texas**

**Cause No. D-1-GN 12-001074-CV**

# MOTION FOR REHEARING

Respectfully Submitted:
Jeff Avant
Avant & Mitchell, L. P.
700 Lavaca, Suite 1400
Austin, Texas  78701
Phone: (512) 478-5757
Facsimile: (512) 478-5404
E-mail: avantlaw@swbell.net

Hugh M. Barton
Hugh M. Barton, P.C.
603 West 13th St, Ste 1B
Austin, TX 78701
Telephone (512) 499-0793
Facsimile (512) 727-6717
E-mail:
bartonlaw@yahoo.com;

1

# TABLE OF CONTENTS

**Table of Contents**................................................................................2

**Index of Authorities**............................................................................3

**Argument and Authority** .....................................................................4

**Point 1:**
The Court of Appeals erred in holding that there is no jurisdiction to consider Appellant's complaints of *ultra vires* acts with request for injunctive relief to compel Doug Wilson and Kyle Janek to set the matter for a hearing. ......................................................................................6

**Point 2:**
The Court of Appeals erred in holding that there is not jurisdiction to make determination of applicability of the statutes and rules to this matter. ...............................................................................................10

**Point 3:**
The Court of Appeals erred in holding that there is not jurisdiction to make determination of validity and constitutionality of the statutes and rules on the grounds that Appellant has not established a vested property interest deserving protection and that Appellant was provided opportunity to be heard at a meaningful time and in a meaningful manner. ...............................................................................................12

**Conclusion and Prayer** ......................................................................16

**Certificate of Compliance with Tex. R. App. P. 9.4(i)(2)(D) and word count** ..........................................................................................17

**Certificate of Service** .........................................................................17

**Addendum:**

Senate Bill 207 text as engrossed and passed by Senate ........................18
       Emphasis added to Section 9 adding Tex. Gov. Code §531.1203,
       and Section 16 (see yellow highlighting)

# INDEX OF AUTHORITIES

**Statutes**
Tex. Hum. Res. Code §32.0291................................................................. 6, 6 fn 115
Tex. Hum. Res. Code §32.046.....................................................................8
Uniform Declaratory Judgment Act, Civil Practice and Remedies
Code §37 ...............................................................................10, 11, 13, 14

**Pending Legislation**
Senate Bill 207 Section 9, 16 adding Tex. Gov. Code §531.1203 ............... 6, 12, 16
and addendum highlighted text as engrossed and passed by Senate

**Administrative Rules;**
1 TAC 354.1811(a) ...........................................................................7, 15
1 TAC 354.1891 and 1892.....................................................................15
1 TAC §371.1603(j)(2) ......................................................................7, 8
1 TAC §371.1667 ................................................................. 6 fn 1, 7, 8
1 TAC 371.1709 .................................................................................8

**Cases**

*Harlingen Family Dentistry, P.C. v. Texas Health & Human Servs.
Comm'n*, 452 S.W.3d 479 (Tex. App.—Austin 2014, pet. filed.) ..................... 6 fn1

*Texas Parks & Wildlife v Sawyer Trust*, 354 S.W. 3d 384 (Tex. 2011)..................14

*Montrose Mgmt. Dist. v 1620 Hawthorn, Ltd* 435 S.W.3d 393 (Tex.
App. - Houston [14th Dist.] 2014, pet filed)............................................. 15

**TO THE HONORABLE THIRD COURT OF APPEALS:**

Comes now Pharmserv, Inc. ("Pharmserv") pursuant to Tex Rule of Appellate Procedure 49 and requests that the Court reconsider its appeal and moves for rehearing, showing as follows:

**Argument and Authority**

Issues in this case are of statewide importance to survival of not just one pharmacy, but survival of the concept of small, full service pharmacies serving retirees and other Medicaid patients. The unanticipated and truly bizarre recent actions by the Health and Human Services Commission ("HHSC") and its department heads and staff and its Inspector General ("OIG") have made the existence of due process rights to independent review an absolute necessity. Reliability and advisability of any provider entering Medicaid Provider Contracts with the state are at risk. On the micro scale, financial urgency is important. Without recognition of rights protected by some rule, statute or the Texas or United State's constitutions – for the provider who does not engage in fraud – are of paramount importance. Declarations on each of these questions are appropriate for judicial review in this case.

Prior to imposition of the unsupported payment hold, Appellant, Pharmserv, Inc. was a small pharmacy which had found a niche of actually delivering medications in an ethnically concentrated corner of the Houston area. Many mobility limited customers were elderly or disabled and qualify under the Medicaid program.

Errors do happen, but $916,000 in errors did not happen. If a jurisdictional bar prevents Appellant from proving up the true figures this pharmacy will close and its customers who need delivery service will have to find another way. The defensive position of the recently discredited OIG that it need give only kangaroo hearings will benefit no rational purpose except, perhaps, to permit the OIG to claim that it is a successful watchdog discovering Medicaid abuse, without risk that such bogus claims will be refuted. Moreover, Appellees' position requires the courts to ignore a strained and wrong interpretation of the legislative scheme for management of Medicaid contracts, which interpretation leads to an absurd, unworkable and intolerable result.

This case has brought the problem to public light. Thirteen days after this court's memorandum opinion was issued, the Texas Senate approved,

with nary a single nay vote, Senate Bill 207 (see addendum) which contains some attempt at a curative clarification of legislative intent that *non-fraudulent* pharmacies in Pharmserv's position must be given meaningful discovery and a hearing to check the OIG's math. SB 207 clarifies legislative intent to provide due process and may save the Medicaid drug program from failure, but may not be retroactive. Survival of this test case plaintiff requires Appellant to respectfully request rehearing, upon the following points.

**Point 1**

**The Court of Appeals erred in holding that there is no jurisdiction to consider Appellant's complaints of ultra vires acts with request for injunctive relief to compel Doug Wilson and Kyle Janek to set the matter for a hearing.**

The Appeals Court recognized at page 12 that the plain language of Human Resources Code §32.0291 and former Rule 1 TAC 371.1667(b) shows that they apply in cases involving sanctions, but erred in summarily concluding that this payment hold does not arise from sanctions[1].

---

[1] The Legislature did not grant HHSC authority to impose holds for mere program violations - a concept already recognized by this court at footnote s 4 and 5 of *Harlingen Family Dentistry, P.C. v. Texas Health & Human Servs. Comm'n*, 452 S.W.3d 479 (Tex. App.—Austin 2014, pet. filed.). The Sunset Commission Report cited therein stated "This recommendation would not affect OIG's *existing authority* to pursue and recover overpayments". *(emphasis added)*

6

Grant of a hearing in a sanctions case is not discretionary. Executive Commissioner Janek and Inspector General Wilson's bald denial that the payment hold applied here is a *sanction* is not supported by any correct reference in the then existing or successor rules or the empowering statute. Rule 1 TAC 354.1811(a) expressly states "*Sanctions include, but are not limited to, termination or suspension from participation, suspension of payments, and recoupment of overpayments*".

That rule goes on to state *"(b) On receipt of a written request, HHSC provides an appeal to a pharmacy provider on whom HHSC sanctions have been placed for a violation described in subsection (a) of this section"*.

The above quoted language and provision for procedure to appeal it is consistent with the provisions of 1 TAC §371.1603(j) (2) which sets out that for payment holds "Imposition of sanctions triggers the due process notice and hearing requirements."

The above is also consistent with and bolstered by 1 TAC §371.1667 (*"(a)The Inspector General affords, to any provider or person against whom it imposes sanctions, all administrative and judicial due process remedies applicable to administrative sanctions"*) and its successor 1 TAC

7

§371.1709, titled "Payment Holds". There is no express provision in 1 TAC §371.1667 or 1 TAC §371.1603(j) (2) that indicated inapplicability to vendor drug cases. Having established that entitlement to a hearing was promulgated in the rules, the courts have jurisdiction to interpret, apply and grant injunctive or mandamus relief to compel the head of the department to grant the hearing - as the published rule requires him to do.

The Human Resources Code provision that empowered the executive commissioner to promulgate rules to address improper claims for reimbursement in the vendor drug program used the same term - "sanctions".

> "Sec. 32.046. SANCTIONS AND PENALTIES RELATED TO THE PROVISION OF PHARMACY PRODUCTS. (a) The executive commissioner of the Health and Human Services Commission shall adopt rules governing *sanctions* and penalties that apply to a provider who participates in the vendor drug program or is enrolled as a network pharmacy provider of a managed care organization contracting with the commission under Chapter 533, Government Code, or its subcontractor and who submits an improper claim for reimbursement under the program." (emphasis added).

There is also factual component. The sanction character of the payment hold at bar is a fact that clearly requires characterization as a sanction. Almost none of the payment hold in this matter based in

8

"restitution". Its basis is principally "early refills" or other technical "program violations" that did not involve any charge for any good or service not fully delivered by Pharmserv, Inc. Compounded by the voodoo of 100X unexplained extrapolation, Pharmserv, which charged HHSC only a small fee plus flow through of costs paid to its suppliers, incurs a penalty which looks to be over $800,000 – though HHSC received the value of the goods. The figures look unfair, to be sure. More importantly, the payment hold is certainly acts as a sanction, even if the extrapolation were validly derived. It is clearly not restitution or repayment of inflated or false charges.

The pleading for injunctive/mandamus relief supports jurisdiction for the courts to make determinations of the authority and duties of the OIG and the commissioner of the HHSC under the guiding law, including whether Pharmserv is entitled to hearing. The court may ultimately determine that Pharmserv was not so entitled should it determine that the legislature did intend to grant the OIG and the Commissioner of the HHSC the power to refuse discovery and to refuse to allow any independent review of its fuzzy math – or that they did not act *ultra vires*. However the panel erred in ruling that there is not jurisdiction to make such determination.

**Point 2**

**The Court of Appeals erred in holding that there is not jurisdiction to make determination of applicability of the statutes and rules to this matter.**

In determining whether the trial court has jurisdiction to make Uniform Declaratory Judgment Act ("UDJA") declaration on issues of interpretation and correctness of application of administrative rules and the empowering statutes, the Appeals Court correctly identified the weight given to agency interpretations:

> "When a statutory scheme is subject to multiple interpretations, we should defer to an enforcing agency's construction <u>if it is reasonable and in harmony with the statute…</u>
>
> … We defer to an agency's interpretation of its own rules <u>unless it is plainly erroneous or contradicts the text of the rule or underlying statute</u>." (emphasis added).

However, the Appeals Court erred in failing to recognize that:

(a) the HHSC and OIG's new interpretation or construction of the empowering statute is not reasonable nor in harmony with the legislative intent in designing the system of empowering statutes;

(b) the agency's interpretation of its own rules is plainly erroneous and contradicts the text of the rule or underlying statute; and,

10

(c) the new interpretation is not in harmony with the treatment of fraudulent providers and whether those who are not accused of fraud should be sanctioned at all.

(d) this situation is appropriate for judicial determination of the facts and applicability of the rules and statutes upon the facts at bar.

Moreover, the pleading for UDJA type relief supports jurisdiction for the courts to make those type determinations and rule whether the agency construction is reasonable and agency interpretation is erroneous.

In this particular instance, the acts complained of (refusal to grant meaningful discovery or hearing before an independent entity) are a recent tactic and a recent wrong interpretation, clearly not intended by the legislature, but dreamt up by an OIG run amok. The scheme to deny any meaningful hearing to the non-fraud provider was certainly unknown prior to the execution of the contract in issue. Otherwise only an ill-advised business person would enter such agreement.

It appears that the entire Senate Chamber now sees the obviously absurd results that "new interpretation" would bring about – if allowed to

11

stand, and has agreed to pass a clarification, or "cure". (See Section 9 of SB 207 [highlighted copy attached in the addendum] which passed the Senate, 30-0 adding Government Code 531.1203 addressing concern about secreted extrapolation methods and meaningful hearing - the specific problem encountered by Appellant herein). See also Section 16 of SB 207, which expressly requires the Commissioner of the HHSC to adopt rules necessary to implement same). This is offered to show that the Appellees' interpretation would provide a ridiculous, unintended and *ultra vires* result.

**Point 3**

**The Court of Appeals erred in holding that there is not jurisdiction to make determination of validity and constitutionality of the statutes and rules on the grounds that Appellant has not established a vested property interest deserving protection and that Appellant was provided opportunity to be heard at a meaningful time and in a meaningful manner.**

Elements of two erroneous factual conclusions were cited as ground to deny jurisdiction. One is the nature of the protected interest and the other is that meaningful opportunity was provided (it was not).

Appellant has provided medications and services, at considerable expense, to the state and federal designated recipients, in a manner that has not been questioned as improper or as an overcharge in any way, yet reimbursement for Appellant's cost is being held. The property interests

12

involved far exceed mere contract rights – though the contract expressly referenced due process. Pharmserv has complied with the state's request that it treat the State's poor, its sick and its elderly and has been subjected to ludicrous extrapolation and agency refusal to reveal the basis of same. The undersigned does not typically engage in criticism of state agencies of staff. It is informative, however that this scenario involves the very department that has encountered staff members (reference news reports regarding Mr. Nelson, Mr. Stick and Mr. Wilson), who have left office under the cloud of widespread impropriety and abuse of power, accused of widespread use of fraudulent figures and methods to inflate claims of Medicaid recoupments.

There is a substantial fact dispute about whether any meaningful discovery or revelation of how the fuzzy math was performed in the audit and no hearing whatsoever as to the sanction imposed. Yet the empowering statutes seem to provide for due process for a provider to seek review the basis of the *sanction* of payment hold were cited to the court, as were the rules promulgated thereunder.

The Court of Appeals correctly notes that the UDJA does waive a governmental entity's immunity for a declaration construing a statute, that

13

the UDJA waives sovereign immunity for suits to challenge the validity of a statute and the APA's declaratory judgment provision allows Plaintiff to challenge the validity and applicability of a rule. However, the Appeals Court has erred in its conclusions that the declaratory relief requested is based in some type of hidden agenda like those which were correctly prohibited in the cited cases such as *Texas Parks & Wildlife v Sawyer Trust*, 354S.W. 3d 384 (Tex. 2011) [which involved a trust's attempt to wrest title to land from the state in order to take and sell gravel from a navigable portion of the Red River]. The distinction is great. Pharmserv, Inc. does not seek to wrest property from the state, but to get a meaningful hearing. If a fair administrative hearing commences, Pharmserv will seek a ruling on fuzzy math by the resoundingly discredited inspector general and staff. However, such relief is permitted by statute and administrative rule and will be granted or denied at the administrative level. Pharmserv seeks from the court system only declaration of its rights to referral to a fair administrative hearing, without any monetary strings, property interests or windfall attached to such declaration. For that sole and genuine limited purpose, the courts have jurisdiction to make declarations.

The Appeals court's reliance upon precedent of a taxpayer suit

14

seeking to invalidate tax assessments in a water control district *Montrose Mgmt. Dist. v 1620 Hawthorn, Ltd* 435 S.W.3d 393 (Tex. App. - Houston [14th Dist.] 2014, pet filed) is also misplaced. *Montrose Mgmt.* proposes that immunity exists from suit to control governmental actions that are within the discretion of the actors. In stark contrast, Pharmserv does not seek to control discretionary acts. *Montrose Mgmt.* does not serve to prohibit this suit. Rather, it affirms that when there are fact questions relating to determining issues of ultra vires acts, jurisdiction does lie (See *Mgmt. Dist. v 1620 Hawthorn, Ltd* 435 S.W.3d 393, 413. Pharmserv, Inc. seeks only a fair hearing. Referral to a hearing is not now nor has it ever been discretionary.

Jurisdiction exists to determine the applicability and validity of the sanctions aspects of §32.0291 of the *Human Resources Code* and former rule 1 TAC §371.1667(b), 1 TAC §354.1811 and the silence of 1TAC §354.1981-1892 as to the procedures for appeal and due process or apply to the matter at bar. The courts should exercise their jurisdiction and declare that Pharmserv Inc.'s statutory construction is wrong or right, or finds facts as to the property rights of a non-fraudulent provider are the same or more deserving a property interest entitling Pharmserv to at least the due process which is afforded a fraudulent crook that has intentionally abused the system

15

to the detriment of the most vulnerable members of society in their weakest moments of illness.

**Conclusion and prayer**

Appellant/Movant requests that the court favorably consider this request for re-hearing, in light of the distinctions of case precedent and the legislative intent shown by the current initiative with SB 207, which seems rooted in recognition of the type of problem encountered by a non-fraud provider.

The question at bar is jurisdiction. Appellant, to survive, needs these issues to be determined, at least to get a chance to have the math of the now discredited OIG office checked by some independent entity, panel or jurist. The Medicaid drug program, to survive, needs the same.

Respectfully Submitted

*Jeff Avant*

Jeff Avant (signed digitally)
AVANT & MITCHELL, L. P.
700 Lavaca, Suite 1400
Austin, Texas 78701
Phone: (512) 478-5757

Facsimile: (512) 478-5404
E-mail: avantlaw@swbell.net

/S/
Hugh M. Barton
State Bar No. 01853700
Hugh M. Barton, P.C.
603 West 13th St, Ste 1B
Austin, TX 78701
Telephone 512-499-0793
Fax 512-727-6717
E-mail:
bartonlaw@yahoo.com;

## CERTIFICATE OF COMPLIANCE UNDER RULE 9.4(i)(2)(D) OF THE TX. RULES OF APPELLATE PROCEDURE

By my signature below I certify that a computer assisted word count of this Motion indicates that the number of countable words is 2,578, from the beginning of page number 4 through the prayer, including footnotes, and that the formatting is in size of at least 14 of the commonly used font of Times New Roman, except footnotes, which are size 12.

*Jeff Avant*

Jeff Avant (signed digitally)

## CERTIFICATE OF SERVICE

By my signature below I certify that a true and correct copy of the above and foregoing document was served on the following by email and/or electronic filing on May 13, 2015:

Ms. Ann Hartley, Assistant Attorney General, of the Financial, Tax and Litigation Section or the Texas office of the Attorney General, 300 West 15th, 6th Floor, Austin, Texas 78711-2548 by email to

*Jeff Avant*

Jeff Avant (signed digitally)

By: Hinojosa, et al.                                    S.B. No. 207

A BILL TO BE ENTITLED

AN ACT

relating to the authority and duties of the office of inspector
general of the Health and Human Services Commission.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Section 531.1011(4), Government Code, is amended
to read as follows:

(4)  "Fraud" means an intentional deception or
misrepresentation made by a person with the knowledge that the
deception could result in some unauthorized benefit to that person
or some other person[, including any act that constitutes fraud
under applicable federal or state law].  The term does not include
unintentional technical, clerical, or administrative errors.

SECTION 2.  Section 531.102, Government Code, is amended by
amending Subsections (g) and (k), amending Subsection (f) as
amended by S.B. 219, Acts of the 84th Legislature, Regular Session,
2015, and adding Subsections (a-2), (a-3), (a-4), (a-5), (a-6), (f-
1), (p), (q), (r), (s), and (t) to read as follows:

(a-2)  The executive commissioner shall work in consultation
with the office whenever the law requires the commissioner to adopt
a rule or policy necessary to implement a power or duty of the
office, including rules necessary to carry out a responsibility
under Subsection (a).

Page - 1 -

(a-3)  The  executive  commissioner  is  responsible  for performing all administrative support services functions necessary to  operate  the  office  in  the  same  manner  that  the  executive commissioner is responsible for providing administrative support services  functions  for  the  health  and  human  services  system, including functions of the office related to the following:

(1)  procurement processes;

(2)  contracting policies;

(3)  information technology services;

(4)  legal services;

(5)  budgeting; and

(6)  personnel and employment policies.

(a-4)  The  commission's  internal  audit  division  shall regularly audit the office as part of the commission's internal audit program and shall include the office in the commission's risk assessments.

(a-5)  The office shall closely coordinate with the executive commissioner and the relevant staff of health and human services system programs that the office oversees in performing functions relating  to  the  prevention  of  fraud,  waste,  and  abuse  in  the delivery of health and human services and the enforcement of state law relating to the provision of those services, including audits, utilization reviews, provider education, and data analysis.

(a-6)  The office shall conduct investigations independent of the executive commissioner and the commission but shall rely on the coordination required by Subsection (a-5) to ensure that the office

has a thorough understanding of the health and human services system for purposes of knowledgeably and effectively performing the office's duties under this section and any other law.

(f)(1) If the commission receives a complaint or allegation of Medicaid fraud or abuse from any source, the office must conduct a preliminary investigation as provided by Section 531.118(c) to determine whether there is a sufficient basis to warrant a full investigation. A preliminary investigation must begin not later than the 30th day, and be completed not later than the 45th day, after the date the commission receives a complaint or allegation or has reason to believe that fraud or abuse has occurred. [A preliminary investigation shall be completed not later than the 90th day after it began.]

(2) If the findings of a preliminary investigation give the office reason to believe that an incident of fraud or abuse involving possible criminal conduct has occurred in Medicaid, the office must take the following action, as appropriate, not later than the 30th day after the completion of the preliminary investigation:

(A) if a provider is suspected of fraud or abuse involving criminal conduct, the office must refer the case to the state's Medicaid fraud control unit, provided that the criminal referral does not preclude the office from continuing its investigation of the provider, which investigation may lead to the imposition of appropriate administrative or civil sanctions; or

(B) if there is reason to believe that a recipient

has defrauded Medicaid, the office may conduct a full investigation of the suspected fraud, subject to Section 531.118(c).

(f-1)  The office shall complete a full investigation of a complaint or allegation of Medicaid fraud or abuse against a provider not later than the 180th day after the date the full investigation begins unless the office determines that more time is needed to complete the investigation.  Except as otherwise provided by this subsection, if the office determines that more time is needed to complete the investigation, the office shall provide notice to the provider who is the subject of the investigation stating that the length of the investigation will exceed 180 days and specifying the reasons why the office was unable to complete the investigation within the 180-day period.  The office is not required to provide notice to the provider under this subsection if the office determines that providing notice would jeopardize the investigation.

(g)(1)  Whenever the office learns or has reason to suspect that a provider's records are being withheld, concealed, destroyed, fabricated, or in any way falsified, the office shall immediately refer the case to the state's Medicaid fraud control unit.  However, such criminal referral does not preclude the office from continuing its investigation of the provider, which investigation may lead to the imposition of appropriate administrative or civil sanctions.

(2)  As [In addition to other instances] authorized under state and [or] federal law, and except as provided by Subdivisions

(8) and (9), the office shall impose without prior notice a payment hold on claims for reimbursement submitted by a provider only to compel production of records, when requested by the state's Medicaid fraud control unit, or on the determination that a credible allegation of fraud exists, subject to Subsections (l) and (m), as applicable. The payment hold is a serious enforcement tool that the office imposes to mitigate ongoing financial risk to the state. A payment hold imposed under this subdivision takes effect immediately. The office must notify the provider of the payment hold in accordance with 42 C.F.R. Section 455.23(b) and, except as provided by that regulation, not later than the fifth day after the date the office imposes the payment hold. In addition to the requirements of 42 C.F.R. Section 455.23(b), the notice of payment hold provided under this subdivision must also include:

(A) the specific basis for the hold, including identification of the claims supporting the allegation at that point in the investigation, [and] a representative sample of any documents that form the basis for the hold, and a detailed summary of the office's evidence relating to the allegation; [and]

(B) a description of administrative and judicial due process rights and remedies, including the provider's option [right] to seek informal resolution, the provider's right to seek a formal administrative appeal hearing, or that the provider may seek both; and

(C) a detailed timeline for the provider to pursue the rights and remedies described in Paragraph (B).

(3)  On timely written request by a provider subject to a payment hold under Subdivision (2), other than a hold requested by the state's Medicaid fraud control unit, the office shall file a request with the State Office of Administrative Hearings for an expedited administrative hearing regarding the hold not later than the third day after the date the office receives the provider's request.  The provider must request an expedited administrative hearing under this subdivision not later than the 10th [30th] day after the date the provider receives notice from the office under Subdivision (2).  The State Office of Administrative Hearings shall hold the expedited administrative hearing not later than the 45th day after the date the State Office of Administrative Hearings receives the request for the hearing.  In a hearing held under this subdivision [Unless otherwise determined by the administrative law judge for good cause at an expedited administrative hearing, the state and the provider shall each be responsible for]:

(A)  the provider and the office are each limited to four hours of testimony, excluding time for responding to questions from the administrative law judge [one-half of the costs charged by the State Office of Administrative Hearings];

(B)  the provider and the office are each entitled to two continuances under reasonable circumstances [one-half of the costs for transcribing the hearing]; and

(C)  the office is required to show probable cause that the credible allegation of fraud that is the basis of the payment hold has an indicia of reliability and that continuing to

pay the provider presents an ongoing significant financial risk to the state and a threat to the integrity of Medicaid [the party's own costs related to the hearing, including the costs associated with preparation for the hearing, discovery, depositions, and subpoenas, service of process and witness expenses, travel expenses, and investigation expenses; and

　　　　[(D) all other costs associated with the hearing that are incurred by the party, including attorney's fees].

　　　　(4) The office is responsible for the costs of a hearing held under Subdivision (3), but a provider is responsible for the provider's own costs incurred in preparing for the hearing [executive commissioner and the State Office of Administrative Hearings shall jointly adopt rules that require a provider, before an expedited administrative hearing, to advance security for the costs for which the provider is responsible under that subdivision].

　　　　(5) In a hearing held under Subdivision (3), the administrative law judge shall decide if the payment hold should continue but may not adjust the amount or percent of the payment hold. Notwithstanding any other law, including Section 2001.058(e), the decision of the administrative law judge is final and may not be appealed [Following an expedited administrative hearing under Subdivision (3), a provider subject to a payment hold, other than a hold requested by the state's Medicaid fraud control unit, may appeal a final administrative order by filing a petition for judicial review in a district court in Travis County].

(6) The executive commissioner, in consultation with the office, shall adopt rules that allow a provider subject to a payment hold under Subdivision (2), other than a hold requested by the state's Medicaid fraud control unit, to seek an informal resolution of the issues identified by the office in the notice provided under that subdivision. A provider must request an initial informal resolution meeting under this subdivision not later than the deadline prescribed by Subdivision (3) for requesting an expedited administrative hearing. On receipt of a timely request, the office shall decide whether to grant the provider's request for an initial informal resolution meeting, and if the office decides to grant the request, the office shall schedule the [an] initial informal resolution meeting [not later than the 60th day after the date the office receives the request, but the office shall schedule the meeting on a later date, as determined by the office, if requested by the provider]. The office shall give notice to the provider of the time and place of the initial informal resolution meeting [not later than the 30th day before the date the meeting is to be held]. A provider may request a second informal resolution meeting [not later than the 20th day] after the date of the initial informal resolution meeting. On receipt of a timely request, the office shall decide whether to grant the provider's request for a second informal resolution meeting, and if the office decides to grant the request, the office shall schedule the [a] second informal resolution meeting [not later than the 45th day after the date the office

receives the request, but the office shall schedule the meeting on a later date, as determined by the office, if requested by the provider]. The office shall give notice to the provider of the time and place of the second informal resolution meeting [not later than the 20th day before the date the meeting is to be held]. A provider must have an opportunity to provide additional information before the second informal resolution meeting for consideration by the office. A provider's decision to seek an informal resolution under this subdivision does not extend the time by which the provider must request an expedited administrative hearing under Subdivision (3). The informal resolution process shall run concurrently with the administrative hearing process, and the informal resolution process shall be discontinued once the State Office of Administrative Hearings issues a final determination on the payment hold. [However, a hearing initiated under Subdivision (3) shall be stayed until the informal resolution process is completed.]

(7) The office shall, in consultation with the state's Medicaid fraud control unit, establish guidelines under which [payment holds or] program exclusions:

(A) may permissively be imposed on a provider; or

(B) shall automatically be imposed on a provider.

(7-a) The office shall, in consultation with the state's Medicaid fraud control unit, establish guidelines regarding the imposition of payment holds authorized under Subdivision (2).

(8) In accordance with 42 C.F.R. Sections 455.23(e) and

(f), on the determination that a credible allegation of fraud exists, the office may find that good cause exists to not impose a payment hold, to not continue a payment hold, to impose a payment hold only in part, or to convert a payment hold imposed in whole to one imposed only in part, if any of the following are applicable:

(A) law enforcement officials have specifically requested that a payment hold not be imposed because a payment hold would compromise or jeopardize an investigation;

(B) available remedies implemented by the state other than a payment hold would more effectively or quickly protect Medicaid funds;

(C) the office determines, based on the submission of written evidence by the provider who is the subject of the payment hold, that the payment hold should be removed;

(D) Medicaid recipients' access to items or services would be jeopardized by a full or partial payment hold because the provider who is the subject of the payment hold:

(i) is the sole community physician or the sole source of essential specialized services in a community; or

(ii) serves a large number of Medicaid recipients within a designated medically underserved area;

(E) the attorney general declines to certify that a matter continues to be under investigation; or

(F) the office determines that a full or partial payment hold is not in the best interests of Medicaid.

(9) The office may not impose a payment hold on claims

for reimbursement submitted by a provider for medically necessary services for which the provider has obtained prior authorization from the commission or a contractor of the commission unless the office has evidence that the provider has materially misrepresented documentation relating to those services.

(k)  A final report on an audit or investigation is subject to required disclosure under Chapter 552.  All information and materials compiled during the audit or investigation remain confidential and not subject to required disclosure in accordance with Section 531.1021(g).  A confidential draft report on an audit or investigation that concerns the death of a child may be shared with the Department of Family and Protective Services.  A draft report that is shared with the Department of Family and Protective Services remains confidential and is not subject to disclosure under Chapter 552.

(p)  The executive commissioner, in consultation with the office, shall adopt rules establishing criteria:

(1)  for opening a case;

(2)  for prioritizing cases for the efficient management of the office's workload, including rules that direct the office to prioritize:

(A)  provider cases according to the highest potential for recovery or risk to the state as indicated through the provider's volume of billings, the provider's history of noncompliance with the law, and identified fraud trends;

(B)  recipient cases according to the highest

potential for recovery and federal timeliness requirements; and

(C) internal affairs investigations according to the seriousness of the threat to recipient safety and the risk to program integrity in terms of the amount or scope of fraud, waste, and abuse posed by the allegation that is the subject of the investigation; and

(3) to guide field investigators in closing a case that is not worth pursuing through a full investigation.

(q) The executive commissioner, in consultation with the office, shall adopt rules establishing criteria for determining enforcement and punitive actions with regard to a provider who has violated state law, program rules, or the provider's Medicaid provider agreement that include:

(1) direction for categorizing provider violations according to the nature of the violation and for scaling resulting enforcement actions, taking into consideration:

(A) the seriousness of the violation;

(B) the prevalence of errors by the provider;

(C) the financial or other harm to the state or recipients resulting or potentially resulting from those errors; and

(D) mitigating factors the office determines appropriate; and

(2) a specific list of potential penalties, including the amount of the penalties, for fraud and other Medicaid violations.

(r)  The office shall review the office's investigative process, including the office's use of sampling and extrapolation to audit provider records.  The review shall be performed by staff who are not directly involved in investigations conducted by the office.

(s)  At each quarterly meeting of any advisory council responsible for advising the executive commissioner on the operation of the commission, the inspector general shall submit a report to the executive commissioner, the governor, and the legislature on:

        (1)  the office's activities;

        (2)  the office's performance with respect to performance measures established by the executive commissioner for the office;

        (3)  fraud trends identified by the office; and

        (4)  any recommendations for changes in policy to prevent or address fraud, waste, and abuse in the delivery of health and human services in this state.

(t)  The office shall publish each report required under Subsection (s) on the office's Internet website.

SECTION 3.  Section 531.1021(a), Government Code, as amended by S.B. No. 219, Acts of the 84th Legislature, Regular Session, 2015, is amended to read as follows:

(a)  The office of inspector general may issue [request that the executive commissioner or the executive commissioner's designee approve the issuance by the office of] a subpoena in connection with an investigation conducted by the office.  A [If the request

is approved, the office may issue a] subpoena may be issued under this section to compel the attendance of a relevant witness or the production, for inspection or copying, of relevant evidence that is in this state.

SECTION 4. Section 531.113, Government Code, is amended by adding Subsection (d-1) and amending Subsection (e) as amended by S.B. 219, Acts of the 84th Legislature, Regular Session, 2015, to read as follows:

(d-1) The commission's office of inspector general shall:

(1) investigate, including by means of regular audits, possible fraud, waste, and abuse by managed care organizations subject to this section;

(2) establish requirements for the provision of training to and regular oversight of special investigative units established by managed care organizations under Subsection (a)(1) and entities with which managed care organizations contract under Subsection (a)(2);

(3) establish requirements for approving plans to prevent and reduce fraud and abuse adopted by managed care organizations under Subsection (b);

(4) evaluate statewide fraud, waste, and abuse trends in Medicaid and communicate those trends to special investigative units and contracted entities to determine the prevalence of those trends; and

(5) assist managed care organizations in discovering or investigating fraud, waste, and abuse, as needed.

(e)  The executive commissioner, in consultation with the office, shall adopt rules as necessary to accomplish the purposes of this section, including rules defining the investigative role of the commission's office of inspector general with respect to the investigative role of special investigative units established by managed care organizations under Subsection (a)(1) and entities with which managed care organizations contract under Subsection (a)(2).  The rules adopted under this section must specify the office's role in:

(1)  reviewing the findings of special investigative units and contracted entities;

(2)  investigating cases where the overpayment amount sought to be recovered exceeds $100,000; and

(3)  investigating providers who are enrolled in more than one managed care organization.

SECTION 5.  Section 531.118(b), Government Code, is amended to read as follows:

(b)  If the commission receives an allegation of fraud or abuse against a provider from any source, the commission's office of inspector general shall conduct a preliminary investigation of the allegation to determine whether there is a sufficient basis to warrant a full investigation.  A preliminary investigation must begin not later than the 30th day, and be completed not later than the 45th day, after the date the commission receives or identifies an allegation of fraud or abuse.

SECTION 6.  Section 531.120(b), Government Code, is amended to

read as follows:

(b)  A provider may [must] request an [initial] informal resolution meeting under this section, and on [not later than the 30th day after the date the provider receives notice under Subsection (a).  On] receipt of the [a timely] request, the office shall schedule the [an initial] informal resolution meeting [not later than the 60th day after the date the office receives the request, but the office shall schedule the meeting on a later date, as determined by the office if requested by the provider].  The office shall give notice to the provider of the time and place of the [initial] informal resolution meeting [not later than the 30th day before the date the meeting is to be held].  The informal resolution process shall run concurrently with the administrative hearing process, and the administrative hearing process may not be delayed on account of the informal resolution process.  [A provider may request a second informal resolution meeting not later than the 20th day after the date of the initial informal resolution meeting.  On receipt of a timely request, the office shall schedule a second informal resolution meeting not later than the 45th day after the date the office receives the request, but the office shall schedule the meeting on a later date, as determined by the office if requested by the provider.  The office shall give notice to the provider of the time and place of the second informal resolution meeting not later than the 20th day before the date the meeting is to be held.  A provider must have an opportunity to provide additional information before the second informal resolution

meeting for consideration by the office.]

SECTION 7.  Sections 531.1201(a) and (b), Government Code, are amended to read as follows:

(a)  A provider must request an appeal under this section not later than the 30th [15th] day after the date the provider is notified that the commission or the commission's office of inspector general will seek to recover an overpayment or debt from the provider.  On receipt of a timely written request by a provider who is the subject of a recoupment of overpayment or recoupment of debt arising out of a fraud or abuse investigation, the office of inspector general shall file a docketing request with the State Office of Administrative Hearings or the Health and Human Services Commission appeals division, as requested by the provider, for an administrative hearing regarding the proposed recoupment amount and any associated damages or penalties.  The office shall file the docketing request under this section not later than the 60th day after the date of the provider's request for an administrative hearing or not later than the 60th day after the completion of the informal resolution process, if applicable.

(b)  The commission's office of inspector general is responsible for the costs of an administrative hearing held under Subsection (a), but a provider is responsible for the provider's own costs incurred in preparing for the hearing [Unless otherwise determined by the administrative law judge for good cause, at any administrative hearing under this section before the State Office of Administrative Hearings, the state and the provider shall each

be responsible for:

[(1) one-half of the costs charged by the State Office of Administrative Hearings;

[(2) one-half of the costs for transcribing the hearing;

[(3) the party's own costs related to the hearing, including the costs associated with preparation for the hearing, discovery, depositions, and subpoenas, service of process and witness expenses, travel expenses, and investigation expenses; and

[(4) all other costs associated with the hearing that are incurred by the party, including attorney's fees].

SECTION 8. Section 531.1202, Government Code, is amended to read as follows:

Sec. 531.1202. RECORD OF AND CONFIDENTIALITY OF INFORMAL RESOLUTION MEETINGS. (a) On the written request of a provider, the [The] commission shall, at no expense to the provider who requested the meeting, provide for an informal resolution meeting held under Section 531.102(g)(6) or 531.120(b) to be recorded. The recording of an informal resolution meeting shall be made available to the provider who requested the meeting. The commission may not record an informal resolution meeting unless the commission receives a written request from a provider under this subsection.

(b) Notwithstanding Section 531.1021(g) and except as provided by this section, an informal resolution meeting held under Section 531.102(g)(6) or 531.120(b) is confidential, and any information or materials obtained by the commission's office of inspector general, including the office's employees or the office's

agents, during or in connection with an informal resolution meeting, including a recording made under Subsection (a), are privileged and confidential and not subject to disclosure under Chapter 552 or any other means of legal compulsion for release, including disclosure, discovery, or subpoena.

SECTION 9. Subchapter C, Chapter 531, Government Code, is amended by adding Sections 531.1023, 531.1024, 531.1027, and 531.1203 to read as follows:

Sec. 531.1023. COMPLIANCE WITH FEDERAL CODING GUIDELINES. The commission's office of inspector general, including office staff and any third party with which the office contracts to perform coding services, shall comply with federal coding guidelines, including guidelines for diagnosis-related group (DRG) validation and related audits.

Sec. 531.1024. HOSPITAL UTILIZATION REVIEWS AND AUDITS: PROVIDER EDUCATION PROCESS. The executive commissioner shall by rule develop a process for the commission's office of inspector general, including office staff and any third party with which the office contracts to perform coding services, to communicate with and educate providers about the diagnosis-related group (DRG) validation criteria that the office uses in conducting hospital utilization reviews and audits.

Sec. 531.1027. PERFORMANCE AUDITS AND COORDINATION OF AUDIT ACTIVITIES. (a) Notwithstanding any other law, the commission's office of inspector general may conduct a performance audit of any program or project administered or agreement entered into by the

commission or a health and human services agency, including an audit related to:

(1)  contracting procedures of the commission or a health and human services agency; or

(2)  the performance of the commission or a health and human services agency.

(b)  The office shall coordinate the office's audit activities with those of the commission, including the development of audit plans, the performance of risk assessments, and the reporting of findings, to minimize the duplication of audit activities.  In coordinating audit activities with the commission under this subsection, the office shall:

(1)  seek input from the commission and consider previous audits conducted by the commission for purposes of determining whether to conduct a performance audit; and

(2)  request the results of an audit conducted by the commission if those results could inform the office's risk assessment when determining whether to conduct, or the scope of, a performance audit.

Sec. 531.1203.  RIGHTS OF AND PROVISION OF INFORMATION TO PHARMACIES SUBJECT TO CERTAIN AUDITS.  (a)  A pharmacy has a right to request an informal hearing before the commission's appeals division to contest the findings of an audit conducted by the commission's office of inspector general or an entity that contracts with the federal government to audit Medicaid providers if the findings of the audit do not include findings that the

pharmacy engaged in Medicaid fraud.

(b)  In an informal hearing held under this section, staff of the commission's appeals division, assisted by staff responsible for the commission's vendor drug program who have expertise in the law governing pharmacies' participation in Medicaid, make the final decision on whether the findings of an audit are accurate.  Staff of the commission's office of inspector general may not serve on the panel that makes the decision on the accuracy of an audit.

(c)  In order to increase transparency, the commission's office of inspector general shall, if the office has access to the information, provide to pharmacies that are subject to audit by the office or an entity that contracts with the federal government to audit Medicaid providers information relating to the extrapolation methodology used as part of the audit and the methods used to determine whether the pharmacy has been overpaid under Medicaid in sufficient detail so that the audit results may be demonstrated to be statistically valid and are fully reproducible.

SECTION 10.  The following provisions are repealed:

(1)  Section 531.1201(c), Government Code; and

(2)  Section 32.0422(k), Human Resources Code, as amended by S.B. 219, Acts of the 84th Legislature, Regular Session, 2015.

SECTION 11.  Notwithstanding Section 531.004, Government Code, the Sunset Advisory Commission shall conduct a special-purpose review of the overall performance of the Health and Human Services Commission's office of inspector general.  In conducting the review, the Sunset Advisory Commission shall particularly focus on

the office's investigations and the effectiveness and efficiency of the office's processes, as part of the Sunset Advisory Commission's review of agencies for the 87th Legislature. The office is not abolished solely because the office is not explicitly continued following the review.

SECTION 12. Section 531.102, Government Code, as amended by this Act, applies only to a complaint or allegation of Medicaid fraud or abuse received by the Health and Human Services Commission or the commission's office of inspector general on or after the effective date of this Act. A complaint or allegation received before the effective date of this Act is governed by the law as it existed when the complaint or allegation was received, and the former law is continued in effect for that purpose.

SECTION 13. Not later than March 1, 2016, the executive commissioner of the Health and Human Services Commission in consultation with the inspector general of the office of inspector general shall adopt rules necessary to implement the changes in law made by this Act to Section 531.102(g)(2), Government Code, regarding the circumstances in which a payment hold may be placed on claims for reimbursement submitted by a Medicaid provider.

SECTION 14. As soon as practicable after the effective date of this Act, the executive commissioner of the Health and Human Services Commission shall adopt the rules establishing the process for communicating with and educating providers about diagnosis-related group (DRG) validation criteria under Section 531.1024, Government Code, as added by this Act.

SECTION 15.  Sections 531.120 and 531.1201, Government Code, as amended by this Act, apply only to a proposed recoupment of an overpayment or debt of which a provider is notified on or after the effective date of this Act.  A proposed recoupment of an overpayment or debt that a provider was notified of before the effective date of this Act is governed by the law as it existed when the provider was notified, and the former law is continued in effect for that purpose.

SECTION 16.  Not later than March 1, 2016, the executive commissioner of the Health and Human Services Commission in consultation with the inspector general of the office of inspector general shall adopt rules necessary to implement Section 531.1203, Government Code, as added by this Act.

SECTION 17.  If before implementing any provision of this Act a state agency determines that a waiver or authorization from a federal agency is necessary for implementation of that provision, the agency affected by the provision shall request the waiver or authorization and may delay implementing that provision until the waiver or authorization is granted.

SECTION 18.  This Act takes effect September 1, 2015.